## DOROTHY CEASE BETTIGOLE
*vs.*
## LOUIS BETTIGOLE

| Superior Court | New Haven County | File No. 61387 |

MEMORANDUM FILED JULY 11, 1942.

*Joseph Weiner*, of New Haven, for the Plaintiff.

*William Dimenstein*, of New Haven, for the Defendant.

Memorandum of decision in action for divorce.

FOSTER, J. The plaintiff is a woman now 37 years of age; the defendant is a man 43 years of age. They were married on June 4, 1932. For some years prior to that date the defendant was the owner of a store in New Haven, where he conducted the business of selling radios and parts thereof, and repairing radios and going about servicing radios. He also furnished and operated amplifiers at meetings and dinners

where such operation was desired. Prior to his marriage his brother worked for him. His brother would open the store in the morning and the defendant would not arrive at the store until 10:30 to 11:00 o'clock in the forenoon. The defendant would then continue at his business all day and keep the store open evenings.

For some time before June 4, 1932, the plaintiff's mother conducted a restaurant in New Haven. The plaintiff, at times, worked for her mother as a waitress in the restaurant.

The defendant, having closed his store in the evening or having finished some task of servicing a radio or operating an amplifier, was in the habit of going for his supper to the restaurant conducted by plaintiff's mother. He would arrive at the restaurant at 9:00 or 10:00 o'clock and, at times, as late as 11:00 o'clock. There, the plaintiff frequently waited upon the defendant in serving him his supper. As they became friendly and courtship began and continued, the defendant, at times, took the plaintiff for automobile rides after he had had his supper, returning, at times, not until the early hours of the morning.

From this brief recounting of undisputed evidence it appears that the plaintiff knew before she married the defendant the late hours that he worked.

As soon as the plaintiff and defendant were married, the plaintiff went into her husband's store and waited on customers as best she was able. For a time the defendant's brother was absent from business, but he returned. The plaintiff knew nothing about the technicalities of the radio business—and much of the business was technical. At times when she would be waiting on a customer, the defendant or his brother would see or hear that she was not serving the customer satisfactorily and the defendant or his brother would brush her aside and continue with the customer in the hope of satisfying the latter. The plaintiff worked in the store about a year and then she remained in the home provided by the defendant. She became lonesome because the defendant left her alone so much of the time. She sought women friends during the evening. With these women friends she played card games for small stakes—penny games, they called them. She often went to bingo games with these friends. At times she read such books as an uneducated person might be ex-

pected to read. The defendant upbraided the plaintiff for these activities. She would leave word where she was at night but sometimes the defendant would not call for her after he closed his business. On several occasions the plaintiff left her home and city for several days at a time, without telling her husband of her intention to go. She would leave in the home a note telling her husband where she was, or she would write to him after she had left.

For parts of three days the court received testimony from witnesses called by the plaintiff and the defendant, who related a multitude of incidents.

The plaintiff claims that on several occasions the defendant slapped her. This the defendant vigorously denies. There is no satisfactory corroborating testimony that the defendant ever used any physical violence toward the plaintiff. There is evidence persuading me not to credit the plaintiff's testimony as to any such violence of the defendant.

That the plaintiff was lonesome is, undoubtedly, true. But she knew the kind of life her husband led before she married him; and at that time she was not a young, inexperienced, impressionable girl, captivated by an attractive man. Before she married her husband she knew what hours he kept and how hard he worked. She thought she was marrying a man of steady habits and one who was the proprietor of a good business and who had an ample income. She, undoubtedly, expected to enter his store and aid him in his business. In a year's time both he and she discovered that she did not have the experience or mental equipment to do this. The occupation of a waitress and that of waiting on customers in a radio store are quite different.

If absence from home at night were to be the underlying basic ground for divorce, thousands of families would find themselves in trouble.

It may well be that the defendant was at times harsh in his criticism of plaintiff on account of her card and bingo playing, her gaming associates and her choice of reading matter; but if the plaintiff is to be heard in complaint of the ways of life of the defendant, which she knew before she married him, she cannot well complain of his criticism of her mode of life acquired after they were married.

After studiously perusing all of the testimony and delib-

erating upon the case for many weeks I cannot escape the impression that the plaintiff desires a decree of divorce so that she may be free to live her life without obligation to her husband and, at the same time, receive from him a substantial sum by way of alimony.

The plaintiff on several occasions absented herself from her husband and then when she chose returned to him and tolerated his treatment of her, whatever it might be. At another time she instituted an action of divorce against him and then withdrew the action. She finally left him in July, 1941, and two months later instituted this action.

Our Supreme Court of Errors has said: "Cruelty includes any wilful act of a human being which inflicts unnecessary pain....But there are trials causing much weariness and suffering, which parties to the marriage contract must bear; the policy of the State, as well as the sacred nature of the marriage covenant, requires patient endurance....It is only when the cumulative effect of the defendant's cruelty upon the suffering victim has become such that the public and personal objects of matrimony have been destroyed beyond rehabilitation, that the condition of fact contemplated by the intolerable-cruelty clause of the statute....should be found to exist." *McEvoy vs. McEvoy,* 99 Conn. 427, 431.

This is the law of this State today.

I find that the defendant should not be free from censure. He has not done what a reasonably kind man would do to give unto his wife a happy life with him.

Nevertheless, I find that the plaintiff has failed to prove by a fair preponderance of the evidence that the defendant has been guilty of conduct toward her that amounts to intolerable cruelty, as that term is interpreted by the law of this State.

The plaintiff's complaint is denied and dismissed.